# EXHIBIT 1

STATE OF NEW JERSEY  :
SOMERSET COUNTY  :

## AFFIDAVIT OF KATHY VAN CAMP

I, Kathy Van Camp, hereby depose and state as follows:

1. I began my employment with Somerset Health Care Corporation in 2004. I currently serve as the Vice President of Operations, Business Development and Physician Relations.

2. Somerset Health Care Corporation is a New Jersey non-profit corporation that operates a hospital located in Somerville, NJ. The hospital, which operates under the name "Somerset Medical Center," is a regional medical center that provides emergency, surgical, medical and rehabilitative services in the Central New Jersey area. The hospital's headquarters and principal place of business are located at 110 Rehill Avenue, Somerville, NJ 08876.

3. Somerset Medical Center operates exclusively in New Jersey, as its primary place of business is the hospital itself. It also operates other medical facilities that are located in Somerville, NJ. It provides medical services and patient care solely in New Jersey, not in Pennsylvania. Somerset Medical Center has no office or place of business in Pennsylvania, nor does it maintain any bank accounts there.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief. I understand that the foregoing statements are made subject to the penalties of 28 U.S.C. §1746.

Dated: 4/6/06

_Kathy VanCamp_
Kathy VanCamp

# EXHIBIT 2

STATE OF NEW JERSEY        :
                           :
SOMERSET COUNTY            :

## AFFIDAVIT OF FRANK PESSOLANO

I, Frank Pessolano, hereby depose and state as follows:

1. I am presently the Director of Patient Support Services for Somerset Health Care Corporation, which operates a hospital under the name "Somerset Medical Center" located at 110 Rehill Avenue, Somerville, NJ 08876.

2. In or about the Spring of 2002, Amper, Politziner & Mattia, P.A., an accounting firm located in Flemington, New Jersey, contacted Somerset Medical Center and offered to conduct a utility audit. Amper, Politziner & Mattia then recommended and introduced UtiliTech, Inc. ("UtiliTech") to Somerset Medical Center. Somerset Medical Center never solicited UtiliTech, nor did it initiate any meeting with UtiliTech.

3. Representatives of UtiliTech spoke with representatives of Somerset Medical Center at a meeting that took place at Somerset Medical Center. UtiliTech's agents made representations about the auditing services it could provide for Somerset Medical Center, as well as the terms of the service.

4. I met with UtiliTech representatives on one or two occasions. To the best of my knowledge, all meetings between UtiliTech and the Somerset Medical Center employees who dealt with UtiliTech (i.e., Joseph Troegner, Thomas Wilgocki and myself) took place in Somerville, NJ.

5. Mr. Wilgocki provided UtiliTech with some utility invoices, as well as an authorization to conduct certain audit-related activities. After Mr. Wilgocki

signed the Master Services Agreement ("Agreement") in New Jersey in approximately June of 2002, there was limited interaction between UtiliTech and Somerset Medical Center. The only action taken by Somerset Medical Center relating to its relationship with UtiliTech took place exclusively in New Jersey, and to the best of my knowledge and recollection, consisted only of some telephone calls and written communications. A couple of telephone calls also took place concerning Somerset Medical Center's involvement in an electric procurement offer through the New Jersey Hospital Association.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief. I understand that the foregoing statements are made subject to the penalties of 28 U.S.C. §1746.

Dated: 4-12-06.

_____
Frank Pessolano

2

# EXHIBIT 3

# Master Services Agreement
MSA-2002-

**UtiliTech, INC.**
Utility & Telecommunications Analysis

**1.0** Bill Auditing For Electric, Natural Gas, Water/Sewer (Utility) and Telecommunications Services. Customer engages UtiliTech to examine and analyze Customer's bills and contracts for utility and telecommunications service for the purpose of determining overcharges or other irregularities resulting from, but not limited to usage/metering errors, billing mistakes, contract violations, utility/telecommunications rates, improper application of public regulation, and improper application of local, state or federal regulations and statutes, which may occur or may have existed prior to the signing of this Agreement. UtiliTech's Bill Auditing Service may result in Refunds or recurring Bill Auditing Savings for the Customer, as defined in the Terms and Conditions section of this Agreement.

**1.1 Scope of Work.**
a. Collect utility and telecommunications usage and account information, screen for errors, inconsistencies and incomplete data, store in database format.
b. Prepare initial and subsequent detailed Recommendations, as defined in the Terms and Conditions section of this Agreement, detailing overcharges, and other savings possibilities resulting from Bill Auditing Services.
c. Prepare necessary documentation and negotiate with Customer's utility and telecommunications service providers to implement approved Recommendations.
d. With Customer's consent, negotiate with the utility and telecommunications service providers to affect any other type of change that will result in savings to Customer.
e. Prepare monthly reports for Customer detailing Refunds and Monthly Savings resulting from UtiliTech Recommendations.
f. Continue to examine and analyze Customer bills and contracts on an as needed, on-going basis during the term of this Agreement.

**2.0** Electricity and Natural Gas (Energy) Procurement & Consulting Services. Customer engages UtiliTech to assist in minimizing Customer's future energy commodity expenditures.

**2.1 Scope of Work.**
a. Develop a profile of the Customer's energy requirements by understanding the Customer's operational and financial needs.
b. Evaluate the impact of operational changes on the Customer's load profile and consequential ability to procure competitive energy supply.
c. Recommend the most appropriate pricing strategies to meet the Customer's energy needs.
d. Evaluate the application of new metering technologies to improve Customer's ability to procure competitive energy supply.
e. Monitor forward wholesale prices to identify opportune times to lock in retail commodity supply.
f. Qualify suppliers and negotiate with them for the best price and most favorable contract terms.
g. Evaluate the cost/benefits of participating in an aggregated retail commodity-buying group.
h. Provide on-going verification of savings realized by Customer for the duration of this Agreement.
i. Assist Customer with energy budgeting and weather sensitivity analysis.
j. Serve as the Customer's Curtailment Service Provider (CSP) to facilitate Customer's participation in voluntary or mandatory load curtailment programs.

## 3.0 Compensation for Services

**3.1 REFUNDS:** Customer agrees to pay UtiliTech a portion (as described in the table below) of the total amount of overcharges or other irregularities removed, refunded, credited or recovered, during the term of this Agreement, as a result of the services performed by UtiliTech.

| Total $ Amount of All Refunds | % of Refund for Fee |
|---|---|
| First $50,000 | 50% |
| From $50,001 to $100,000 | 40% |
| Over $100,000 | 32% |

**3.2 SAVINGS:** Customer agrees to pay UtiliTech a portion (as described in the table below) of the Bill Audit and Energy Procurement & Consulting Savings, as defined in the Terms and Conditions section of this Agreement, realized by the Customer, each month, for each UtiliTech Recommendation implemented, for twenty-four (24) months, beginning the date the Savings first appears on the Customer's billing.

| $ Amount of Monthly Savings | % of Savings for Fee |
|---|---|
| up to $10,000 | 50% |
| $10,001 to $15,000 | 40% |
| $15,001 & over | 32% |

**4.0. Payment Terms:** All payments are due to UtiliTech within thirty (30) days of invoice date. Payments received after due date are subject to late fees of two percent (2%) of unpaid balance or $25.00, whichever is greater.

I hereby acknowledge that I have read and agreed to the preceding terms of this Agreement, and to the Terms & Conditions on the reverse.

For: UtiliTech, Inc.
Stabon Pond Plaza
360 E. Wyomissing Avenue
Mohnton, PA  19540

For Customer: _____

Name: Steve A. Bobick
Sign: 
Title: President
Date: 
Phone: 610-777-3200, ext. 101
Fax: 610-777-2699
Email: sab@utilitech.com

Name: Tom Wilgocki
Sign: [signature]
Title: Associate Director of Plant Operations
Date: 6/3/02
Phone: 908-685-2821
Fax: 908-704-3760
Email:

## Terms And Conditions
MSA-2002-

Definitions

5.1   **Bill Auditing Savings** is the difference between the utility/telecommunications costs the Customer pays if UtiliTech's recommendations are followed and the Customer's original cost for this service. Savings will include cash or other monetary concessions, the fair market value of free service, and/or incentives negotiated by UtiliTech on the Customer's behalf. Any equipment costs to Customer that are directly associated with Customer's implementation of UtiliTech's recommendations will be amortized over the useful lifespan of that equipment, in accordance with generally accepted accounting principles, in order to calculate net savings to Customer.

5.2   **Energy Procurement & Consulting Savings** is the difference between the energy supply costs customer would have paid under their Energy Distribution Company's Provider of Last Resort Service and Customer's actual energy supply costs and will include cash or other monetary concessions, free service, or other incentive provided Customer by their energy service provider.

5.3   **Recommendation:**   A UtiliTech Recommendation will (1) estimate the savings Customer will realize by following the Recommendation, (2) detail the actions the Customer must take in order to realize the anticipated savings, and (3) estimate the installation or recurring costs the Customer will experience in order to implement the Recommendation. UtiliTech Recommendations will be presented to Customer by fax, email, or hardcopy report throughout the term of this Agreement and be clearly identified as a "UtiliTech Recommendation".

5.4   **Customer Control:**   All decisions regarding UtiliTech's Recommendations are made unilaterally at the discretion of the Customer. If Customer elects not to implement a UtiliTech Recommendation, Customer cannot implement said Recommendation, during the two-year term of this Agreement, without compensating UtiliTech as per this Agreement.

5.5   **Exclusivity:**   Customer represents that it is not currently under contract with and will not engage another third party to perform Utility and Telecommunications Bill Auditing, and Energy Procurement & Consulting Services as agreed to hereunder during the term of this Agreement. Customer shall not negotiate any changes in utility or telecommunications service that results in savings to Customer, during the term of this Agreement, without prior written consent of UtiliTech. If Customer is in violation of this provision, Customer shall pay compensation to UtiliTech as if all Utility and Telecommunications Bill Auditing, and Energy Procurement & Consulting Savings had been made and implemented by UtiliTech.

5.6   **Confidentiality:**   Any reports or Recommendations provided by UtiliTech to Customer remain the property of UtiliTech and Customer, its employees, agents and servants and hereby agree not to provide said reports, Recommendations or other information to any persons other than those specifically under the regular employment of the Customer. UtiliTech covenants and agrees that any information contained in any utility/telecommunications bills or other documentation provided by Customer to UtiliTech shall be used solely for the purposes herein contained. UtiliTech covenants and agrees not to disclose any information contained in any utility/telecommunications bills to any person for any reason other than to further the process of this Agreement. Customer and UtiliTech agree that the terms of this Agreement are confidential. UtiliTech has the right to include Customer's name/logo in any future marketing material and presentations.

5.7   **Access to Customer information:**   Customer shall give its full cooperation to UtiliTech in providing any required letter of authority, bill copies or other relevant data, as deemed necessary by UtiliTech, in a timely manner. If Customer does not provide bill copies or other relevant data to monitor success of approved Recommendations, UtiliTech reserves the option in its sole and absolute discretion to invoice Customer based on UtiliTech's initial estimates of Refunds and Savings.

5.8   **Remedies:**   In the event Customer should for any reason fail or refuse to pay UtiliTech any sum due hereunder, UtiliTech may, upon written notice to Customer, accelerate the total amount of payments due UtiliTech for the balance of the term remaining under this Agreement. In addition, Customer agrees to pay all reasonable Attorney fees and costs incurred by UtiliTech in the enforcement of this Agreement. UtiliTech may immediately terminate this Agreement and suspend service for Customer's non-compliance with this Section.

5.9   **Customer Exclusions:**   Customer acknowledges that there are no negotiations in process with any utility/telecommunications service providers for credits, refunds or changes in any rates that result in savings to Customer except for the specific issues listed below. Customer acknowledges that there are no utility/telecommunications saving opportunities under study or in the process of being implemented except for the specific issues listed below. Issues not listed here that are on an UtiliTech Recommendations report, fax or email shall be UtiliTech Recommendations.

1) _____

2) _____     initials

_____     initials

5.10   **Term:**   The term of this Agreement shall be two (2) years. However, Customer's payment obligations, as defined on the previous page of this Agreement, may extend beyond the end date of this Agreement. In addition, Customer will have a payment obligation for UtiliTech Recommendations the Customer is in the process of implementing as of the end date of this Agreement.

5.11   **Limitation of Liability:**   The liability of UtiliTech, for any and all claims arising from or relating to this Agreement, including any causes of action in contract, tort or strict liability, shall not exceed UtiliTech's cumulative billings under this Agreement. Notwithstanding any other provision of this Agreement, in no event shall UtiliTech, be liable for any consequential, exemplary, special, incidental or punitive damages, including, without limitation, lost opportunities or lost profits.

5.12   **Attorney Fees:**   In the event that the services of an Attorney at Law are required, in connection with any negotiations referred to herein, the Customer shall choose and engage such Attorney (at Customer's discretion), at the cost of the Customer. UtiliTech shall cooperate with said Attorney in the furtherance of such negotiations. Fees payable to UtiliTech for its services are separate and distinct from any fee payable by the Customer to any Attorney engaged by the Customer. If, through the efforts of said Attorney, a refund, credit or savings is obtained, the fee payable to UtiliTech will be based on the net amount of savings after the said Attorney's fee is paid.

5.13   **Miscellaneous:**   The written agreement is the entire agreement. There is no guarantee of any net amount of savings. When executed by the parties hereto, this Agreement shall be binding upon all parties and shall inure to the benefit of their heirs, personal representatives, successors, and permitted assigns. This Agreement is the entire agreement between the parties and no previous or contemporaneous oral, written or otherwise indicated agreements shall be of any force or effect. This Agreement may not be modified, amended, or altered without the prior written consent of all signatories hereunder. This Agreement shall be interpreted and construed according to the laws of the Commonwealth of Pennsylvania.

# EXHIBIT 4



*Utility & Telecommunications Analysis*

Tuesday, April 22, 2003

Mr. Tom Wilgocki, Assoc. Dir. of Plant Operations
Somerset Medical Center
110 Rehill Ave.
Somerville, NJ  08876



Dear Tom:

UtiliTech values you as an existing client and we thank you for your business. I am sure you are aware that under the Master Services Agreement that you signed, it is a tiered savings arrangement, with fees decreasing from 50% down to 32% (depending how much we save you). **We have good news for you!** UtiliTech has reduced the **Electric Procurement only** portion of this agreement down to a fee of 20% of the savings.

Here is how this will work. We have enclosed a new agreement for Electric Procurement only to reflect this change. We have found that most companies like to have their paperwork in order, so if this is you, please sign the 20% Electric Procurement agreement and return it to us. If you prefer not to sign and return this agreement, we will still only invoice you for 20% of your electric procurement savings when they materialize.

**Why?** UtiliTech was able to automate our Electric Procurement in house systems to handle more volume. Our costs have dropped and we decided to pass this on to our clients. We had the option of drawing a line in the sand and saying everyone who signed before such and such a date would be billed according to the agreement they signed. We chose to be fair to all our clients and make this arrangement retroactive to include all UtiliTech clients.

If you have any questions please feel free to call.

Sincerely,

Charity Quinn
Vice President of Marketing

975 Berkshire Blvd.  ◦  Suite 100  ◦  Wyomissing, PA   19610
610-777-3200  ·  FAX 610-777-2699
www.utilitech.com

# Electric Procurement Services Agreement
EPSA-2003-

**UtiliTech, INC.**
Utility & Telecommunications Analysis

1.0 **Electricity Procurement Services:** Customer engages UtiliTech to assist in minimizing Customer's future electric commodity expenditures.

2.0 **Scope of Work:**

   a. Collect electrical usage information and assigned account parameters. Screen for errors, inconsistencies, or missing data.
   b. Develop a profile of the Customer's energy requirements by understanding the Customer's operational and financial needs.
   c. Monitor electricity market for best price lock-in opportunity.
   d. Recommend the most appropriate retail pricing strategies to meet the Customer's energy needs.
   e. Prepare and issue Request for Proposal to qualified energy suppliers. Conduct live on-line pre-bid conferences as needed.
   f. Negotiate with suppliers for best price and most favorable contract terms.
   g. Present detailed report of bid results, estimates of savings and recommendations to Customer.
   h. Facilitate retail electric service contract phase between Customer and selected suppliers.
   i. Work with suppliers selected by Customer to ensure smooth transition of service.
   j. Provide on-going verification of Savings realized by Customer for the duration of this Agreement.

2.2 **Compensation For Electricity Procurement Services:** Customer agrees to pay UtiliTech twenty percent (20%) of the Electricity Procurement Savings as defined in the Terms and Conditions section (4.1) of this Agreement, realized by the Customer as a result of Recommendations implemented by Customer, with or without the assistance of UtiliTech. The Customer's payment obligation to UtiliTech will continue for the term of this Agreement or until the termination date of the last commodity supply contract entered into during the term of this Agreement, whichever is later. The amount due to UtiliTech shall be based on reports prepared monthly by UtiliTech, detailing the dollar amount of Electricity Procurement Savings.

3.0. **Payment Terms.** All payments are due to UtiliTech within thirty (30) days of invoice date. Payments received after due date are subject to late fees of two percent (2%) of unpaid balance or $25.00, whichever is greater

I hereby acknowledge that I have read and agreed to the preceding terms of this Agreement, and to the Terms & Conditions on the reverse.

For: UtiliTech, Inc.
975 Berkshire Boulevard
Suite 100
Wyomissing, PA  19610

Name: Steve A. Bobick
Sign:
Title: President
Date:
Phone: 610-777-3200, ext. 101
Fax: 610-777-2699
Email: sab@utilitech.com

For Customer:

Name:
Sign:
Title:
Date:
Phone:
Fax:
Email:

## Terms And Conditions
EPSA-2003-

4.0 Definitions:

4.1 **Electric Procurement Savings:** The difference between the electric supply costs customer would have paid under their Electric Distribution Company's Provider of Last Resort Service and Customer's actual electric supply costs. Includes cash or other monetary concessions, the fair market value of free service, or other incentive provided Customer by their electric service provider.

4.2 **Recommendation:** A UtiliTech Recommendation will (1) estimate the savings Customer will realize by following the Recommendation, (2) detail the actions the Customer must take in order to realize the anticipated savings, and (3) estimate any cost of equipment installation necessary for optimizing savings through procurement or any recurring costs the Customer will experience in order to implement the Recommendation. UtiliTech Recommendations will be presented to Customer by fax, email, or hardcopy report throughout the term of this Agreement and be clearly identified as a "UtiliTech Recommendation".

4.3 **Electric Generation Service:** Consists of the components of electric service the customer is eligible to competitively source as a result of the deregulation of retail electric supply.

4.4 **Customer Control:** All decisions regarding UtiliTech's Recommendations are made unilaterally at the discretion of the Customer. If Customer elects not to implement a UtiliTech Recommendation, Customer shall not implement said Recommendation, during the two-year term of this Agreement, without compensating UtiliTech as per this Agreement.

4.5 **Exclusivity:** Customer represents that it is not currently under contract with and will not engage another third party to perform Electric Procurement Services as agreed to hereunder during the term of this Agreement. Customer shall not negotiate on its own, or with the assistance of a third party, changes to their supply during the term of this Agreement, without prior written consent of UtiliTech. If Customer is in violation of this provision, Customer shall pay compensation to UtiliTech as if all Electric Procurement Savings had been made and implemented by UtiliTech.

4.6 **Confidentiality:** Any reports or Recommendations provided by UtiliTech to Customer remain the property of UtiliTech and Customer, its employees, agents and servants and Customer agrees not to provide said reports, Recommendations or other information to any persons other than those specifically under the regular employment of the Customer. UtiliTech covenants and agrees that any information contained in any electric bills or other documentation provided by Customer to UtiliTech shall be used solely for the purposes herein contained. UtiliTech covenants and agrees not to disclose any information contained in any electric bills to any person for any reason other than to further the process of this Agreement. Customer and UtiliTech agree that the terms of this Agreement are confidential. UtiliTech has the right to include Customer's name/logo in any future marketing material and presentations.

4.7 **Access to Customer Information:** Customer shall give its full cooperation to UtiliTech in providing any required letter of authority, bill copies or other relevant data, as deemed necessary by UtiliTech, in a timely manner. If Customer does not provide bill copies or other relevant data to monitor success of approved Recommendations, UtiliTech reserves the option in its sole and absolute discretion to invoice Customer based on UtiliTech's initial estimates of Savings.

4.8 **Remedies:** In the event Customer should for any reason fail or refuse to pay UtiliTech any sum due hereunder, UtiliTech may, upon written notice to Customer, accelerate the total amount of payments due UtiliTech for the balance of the term remaining under this Agreement. In addition, Customer agrees to pay all reasonable Attorney fees and costs incurred by UtiliTech in the enforcement of this Agreement. UtiliTech may immediately terminate this Agreement and suspend service for Customer's non-compliance with this Section.

4.9 **Customer Exclusions:** Customer acknowledges that there are no procurement negotiations in process with any utility, supplier, or others, for any accounts other than those listed and initialed below. Accounts or procurement efforts not listed here, that are included in UtiliTech's presented procurement recommendations, shall be UtiliTech Recommendations. During the course of this Agreement, Customer is free to investigate and implement, with no obligation to UtiliTech, electricity procurement opportunities, that are not identified as UtiliTech recommendations. Customer will notify UtiliTech in writing of the opportunity to be evaluated or implemented, to avoid duplication of efforts and to allow UtiliTech the ability to assess the impact of Customer's proposed work on work being done by UtiliTech on the Customer's behalf.

1) _____

2) _____  initials

_____  initials

4.10 **Term:** The term of this Agreement shall be two (2) years. However, Customer's payment obligations, as defined on the previous page of this Agreement, may extend beyond the end date of this Agreement. In addition, Customer will have a payment obligation for UtiliTech Recommendations the Customer is in the process of implementing as of the end date of this Agreement.

4.11 **Limitation of Liability:** The liability of UtiliTech, for any and all claims arising from or relating to this Agreement, including any causes of action in contract, tort or strict liability, shall not exceed UtiliTech's cumulative billings under this Agreement. Notwithstanding any other provision of this Agreement, in no event shall UtiliTech, be liable for any, compensatory, consequential, exemplary, special, incidental or punitive damages, including, without limitation, lost opportunities or lost profits.

4.12 **Attorney Fees:** In the event that the services of an Attorney at Law are required, in connection with any negotiations referred to herein, the Customer shall choose and engage such Attorney (at Customer's discretion), at the cost of the Customer. UtiliTech shall cooperate with said Attorney in the furtherance of such negotiations. Commissions payable by the contracted energy supplier(s) to UtiliTech for its services are separate and distinct from any fee payable by the Customer to any Attorney engaged by the Customer. UtiliTech shall not be entitled to any portion of refunds, credits, or savings if they are obtained strictly through the efforts of said Attorney.

4.13 **Miscellaneous:** The written agreement is the entire agreement. There is no guarantee of any net amount of savings. When executed by the parties hereto, this Agreement shall be binding upon all parties and shall inure to the benefit of their heirs, personal representatives, successors, and permitted assigns. This Agreement is the entire agreement between the parties and no previous or contemporaneous oral, written or otherwise indicated agreements shall be of any force or effect. This Agreement may not be modified, amended, or altered without the prior written consent of all signatories hereunder. This Agreement shall be interpreted and construed according to the laws of the Commonwealth of Pennsylvania.